ROSWELL SMITH *v.* W. C. SLEMONS.

ROAD COMMISSIONERS. *Powers.* The road commissioners, under the act of 1881, ch. 38, have no authority to re-open an alley in a town whose charter has been repealed, where the evidence tends to show that the alley was never opened by competent authority, and that no right of way was ever acquired by adverse user, and it is proved that the town corporation had sold the land of the alley to the defendant, and that he and petitioner had joined in closing the alley with a fence; nor can the commissioners open a new road unless shown to be required by the public.

FROM WASHINGTON.

Appeal in error from the Circuit Court of Washington county.   N. HACKER, J.

JOHN ALLISON, JR., for Smith.

J. E. REEVES and C. E. DOSSER for Slemons.

COOPER, J., delivered the opinion of the court.

The charter of the town of Jonesboro was repealed by the Legislature in February, 1879. And the county court of Washington county, at its April term thereafter, undertook to declare all the public streets and alleys within the late corporate limits public roads, the principal streets as roads of the first class, the cross streets as roads of the second class, and "all other lanes and alleys" as "bridle ways."

In September, 1881, Roswell Smith commenced the proceeding now before us by petition to the

road commissioners for the sixth road district of Washington county to re-open an alley within the limits of the late corporation, alleged to have been closed by the defendant Slemons. The petition was filed under the act of 1881, ch. 38, sec. 14, which provides: "That all applications to open, change or close a road shall be made to the commissioners of the district through which the road is located," upon notice given to the parties interested. The circuit judge, who tried the case upon appeal, dismissed the petition, and the petitioner appealed in error.

The petitioner is the owner of a lot in the late town fronting on Church street, and running back to the alley in controversy. The defendant owns the lot across the alley. In 1875, the defendant bought the land covered by the alley from the corporation of Jonesboro, and he and petitioner joined in closing the alley, each building a part of the obstructing fence. The petitioner established a saw and grist mill on his lot, and now thinks that it is to his interest to re-open the alley.

The land on which the alley and both lots were situated seems originally to have belonged to the corporation. The town is the oldest in the State, having celebrated its centennial anniversary a few years ago. This part of the town has undergone various vicissitudes. For a long time most of it was vacant, and vehicles passed over it in going to, and coming from Main and Church streets. Afterwards buildings were erected on these streets, and on the alley, some of the former encroaching more or less on the supposed alley.

For many years, all of the houses fronting on the alley have disappeared, and the petitioner on the one side, and the defendant on the other own the land on that part of the alley between the creek and the railroad, which seems to have been the only part ever at any time passable for vehicles.

The alley, where it leaves Main street is the natural channel of the water which, through the greater part of the year, flows across that street from the old Blountville road. It continues in a southern direction about 432 feet to a creek. This part of the alley was left open because it was a natural drain, and during the greater part of the time has been obstructed by a bridge across it at Main street, and another bridge at the creek. It seems to have varied in width from 9 to 12 feet. It was continued beyond the creek 132 feet in the same direction. About the year 1857, the East Tennessee & Virginia Railroad Company closed the end of it just beyond the lands of the parties litigant by an embankment for a road. The other end was obstructed by the bridge across the creek. For more than twenty years, the alley has been used by foot passengers alone.

There is no proof that the alley was ever laid off, or worked by the corporate authorities of the town. It seems to have grown into existence by the voluntary act of the lot owners owing to the fact that the greater part of it was a natural drain for surface water. At most, the evidence shows acquiescence by the adjoining proprietors and the town in such use as it was capable of by the public. And recognizing its

subsequent disuse by reason of the obstrutions at both ends, the corporate authorities sold the land in 1875 to the defendant, and he and the petitioner joined in closing it from the public. The public made no complaint. The circuit judge must have found as facts that a right of way for the public had never been laid off by competent authority, or acquired by adverse user. In this view, to sustain which the evidence is sufficient, there is no authority in the road commissioners to re-open the alley. The alley had been abandoned by the town corporation and the public, and closed by the adjoining land owners before the charter of the town was repealed. The order of the county court had nothing to operate on. The application, therefore, becomes one to open a new road over the land. But the proof is clear that the necessities of the public do not require a road at that place. The only person who might be benefitted by it would be the petitioner. His lot fronts on Church street, which was a public street, and is now a public road of the first class. He has not made out a case for opening a new road.

Affirm the judgment.